607 So.2d 1232 (1992)
H.L. DAWKINS, Jr. and Lottie Mae Dawkins
v.
REDD PEST CONTROL COMPANY, Incorporated.
No. 89-CA-0103.
Supreme Court of Mississippi.
October 8, 1992.
Rabun Jones, Dyer Dyer Dyer & Jones, Greenville, for appellant.
*1233 James H. Gabriel, Fred W. Johnson, Jr., Pyle Dreher Mills & Woods, Jackson, James C. Mingee, III, Ridgeland, for appellee.
EN BANC.

ON PETITION FOR REHEARING
BANKS, Justice, for the Court:
This matter is before the Court on petition for rehearing following a per curiam affirmance of a verdict in favor of plaintiff. We have concluded that the trial court erred in refusing plaintiffs' discovery requests, possibly frustrating their efforts to present evidence supportive of a finding of fraud or gross negligence and the imposition of punitive damages. Accordingly, we grant the petition for rehearing and reverse and remand for further proceedings.

I
This case arises from a civil suit filed by H.L. and Lottie Mae Dawkins against Redd Pest Control Company, Inc. (Redd) in the Circuit Court of Washington County from a negligent pre-sale termite inspection of a house that they purchased. The Dawkinses alleged in their complaint that Redd fraudulently and with gross negligence provided them with a written certificate which indicated that Redd had inspected a house, which the Dawkinses intended to purchase, and had observed no visible evidence of infestation by termites. The Dawkinses allege that Redd never performed the inspection and therefore failed to discover termite infestation readily visible in the crawl space of the house. The Dawkinses further alleged that Redd knew that the representations were false and that they would rely on them. The Dawkinses requested $20,000 in compensatory damages, $250,000 in punitive damages, and all costs of the litigation.
The case was tried before a jury, which found for the Dawkinses and assessed their damage at $4,596.74. The Dawkinses appealed and assigned as error:
1. The trial court abused its discretion and committed reversible error when, in refusing to require Redd to answer interrogatory No. 4, it vetoed discovery of similar fraudulent acts by Redd's agent, Murray Strickland.
2. Reversible error occurred when the trial court suppressed the testimony of Joyce Rossini concerning a similar fraudulent occurrence.
3. In failing to charge the jury on the issue of fraud, as set forth in instructions P-1, P-2, and P-3, the trial court committed reversible error.
4. In failing to allow gross negligence and damages to go to the jury as requested in instruction P-7, the trial court committed reversible error.

II
On August 26, 1985, H.L. Dawkins, Jr. and his wife Lottie Mae purchased a house from John and Mona Jackson. As a condition to the purchase the Dawkinses required a letter certifying that the house was free of termites. The Jacksons maintained a contract with Redd Pest Control to occasionally inspect the house, and treat it, if necessary, for termites. Redd did a pre-sale termite inspection of the house for the Jacksons.
The pre-sale inspection was done in July of 1985 by Murray Strickland, a service technician for Redd. Strickland crawled under the house, checking it with a flashlight and screwdriver looking for signs of termite tunnels and any signs of any kind of damage. After he completed the inspection, Strickland completed a form to show the extent, if any, of termite infestation. In response to a question that asked if there were any obstructed or inaccessible areas, Strickland answered, no. Strickland indicated that based on careful visual inspection there was no visible evidence of infestation.
Prior to their purchase of the house, the Dawkinses were given the form. The form did not indicate any previous history of termites or that any visible evidence of infestation was found during the inspection. The Dawkinses went ahead and purchased the home relying on this information. Later extensive termite damage was *1234 discovered causing the Dawkinses to incur considerable expense to have it repaired.
On June 22, 1987, the Dawkinses filed a complaint in the Circuit Court of Washington County, alleging that Redd, through its agent Murray Strickland, provided them with a written form that stated that the home had been inspected and that there was no visible evidence of termite infestation. They alleged that Strickland knew the information was false and he gave the form with the intent to defraud them. They further alleged that they relied on the representation of the form and were damaged, making Redd guilty of fraud or grossly negligent misrepresentation. The Dawkinses alleged as damages in excess of $10,000 in expenses to repair the termite damage, $10,000 for mental and emotional distress, and $250,000 in punitive damages.
Attached to the complaint was a set of interrogatories. One of the interrogatories, Interrogatory No. 4, requested that Redd produce the last known address and telephone number of each and every person for whom Murray Strickland had performed a pre-sale termite inspection since January 1, 1982. In answering the interrogatories, Redd objected to Interrogatory No. 4 as being overreaching, irrelevant and unduly burdensome. At a hearing held on January 18, 1988, the Dawkinses moved for an order to compel, among other things, Redd to respond to interrogatory number 4, which reads as follows:
Please provide the name, last known address and telephone number of each and every person for whom Murray Strickland (acting as an employee of Defendant) has performed or purportedly performed at any time since January 1, 1985, a pre-sale termite inspection or has filled out a form similar to the form attached to the Complaint herein as Exhibit "A."
The motion was granted in regard to other matters, but was overruled in regard to interrogatory number 4, as the court found that the interrogatory sought "information outside the permissible scope of discovery."
At trial, Mr. Dawkins testified about the purchase of the house and the receipt of the form indicating that the house was free of termites. He stated that he relied on the form's representation that the house was not infested with termites. Mr. Dawkins indicated that after the purchase of the house, during August-October of 1985, they attempted to contact Redd to get Redd to continue the contract on the house that was originally with the Jacksons. Unable to do so, the Dawkinses, on October 2, 1985, hired Terminix to inspect the house. Terminix sent David Jones to perform the task and, after inspecting the house, Jones informed Mr. Dawkins that they had termites. Mr. Dawkins informed Redd of what Jones had found and Redd sent someone to check the house. Also, in October of 1985 a further discovery of termite damage in the floors, wall, and door of one of the rooms was made by Charles Dillon, a carpenter hired to make minor repairs to the house.
Testimony from a former Redd employee revealed that Redd had found termite damage at the home in 1974, 1983 and 1984. The house had been under a termite contract between its then owners and Redd. In 1983 and 1984 repairs were made at Strickland's request. Plaintiffs offered the testimony of Joyce Rossini to the effect that Strickland had done a pre-sale inspection for her and indicated no infestation and that termites were later discovered. That testimony was excluded. See, Murray Strickland and Redd Pest Control Co., Inc. v. Joyce Brown Rossini and the Federal Land Bank of Jackson, 589 So.2d 1268 (Miss. 1991) for a more complete exposition of the facts plaintiffs sought to elicit.
The termite inspection letter upon which the Dawkinses rely represented that a careful inspection had been made; that based on that inspection no visible evidence of infestation was observed and that no areas of the property were inaccessible and all areas had been inspected. Redd took the position at trial that the damage in question was not readily visible and that Strickland was merely negligent, at most.
The court refused plaintiffs' fraud, gross negligence and punitive damages instructions *1235 and the case went to a jury on the issue of negligence.

III
The issue we now treat is neither the propriety of the court's rulings concerning the proffered instructions, nor its failure to allow the Rossini testimony. Viewed in the context of the evidence before the court, those rulings were correct. The question is what if any evidence was not presented due to the court's earlier discovery ruling.
In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion. Clark v. Mississippi Power Co. 372 So.2d 1077, 1080 (Miss. 1979); Palmer v. Biloxi Regional Medical Center, Inc. 564 So.2d 1346, 1368 (Miss. 1990). Where, however, limitations on discovery are improvidently ordered or allowed and important information is denied a litigant reversal will obtain. See, e.g. Goosman v. A. Duie Pyle, Inc., 336 F.2d 151 (4th Cir.1964); Goldman v. Checker Taxi Co., 325 F.2d 853, 856 (7th Cir.1963).
The scope of discovery is governed by Rule 26(b) of the Mississippi Rules of Civil Procedure. It states that:
(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party. The discovery may include the existence, description, nature, custody, condition and location of any books, documents, or other tangible things; and the identity and location of any persons having knowledge of any discoverable matter; and the oral testimony of witnesses. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
The comment to Rule 26 explains that:
With two important exceptions, MRCP 26 is identical to Miss. Code Ann. § 13-1-266 (1972): subdivision 26(b)(1) narrows the scope of permissible discovery .. .
Sweeping and abusive discovery is encouraged by permitting discovery confined only by the "subject matter" of a case  the language of Miss. Code Ann. § 13-1-266(b) (1972)  rather than limiting it to the issues presented. Discovery should be limited to the specific practices or acts that are in issue. Determining when discovery spills beyond "issues" and into "subject matter" will not always be easy, but MRCP 26(b)(1) is intended to favor limitations, rather than expansions, on permissible discovery. Accordingly, "admissible evidence" referred to in the last sentence of 26(b)(1) must be limited by the new relevancy which emerges from the term "issues," rather than from the more sweeping term "subject matter."
Comment, Miss.R.Civ.P. 26.
The Dawkinses argue that the information requested in Interrogatory 4 was relevant to the issue of fraudulent intent, as they were "casting their nets for evidence of other fraudulent acts." They point to cases in which the admission of evidence of similar transactions of fraud was upheld on the issue of fraudulent intent. e.g., Citizens National Bank of Meridian v. Allen, 76 Miss. 157, 167 So. 627 (1936); Nash Mississippi Valley Motor Company v. Childress, 156 Miss. 157, 125 So. 708 (1930). They further argue that Rule 404(b) of the Mississippi Rules of Evidence is a continuation of the "rule" followed in those cases.
Redd argues that the intent of the Mississippi Rules of Civil Procedure is to prevent fishing expeditions and to limit the scope of discovery to the issues. Redd points out that the issues in this case were fraud, negligence, and gross negligence; therefore, the reports requested by the interrogatory were totally irrelevant. Redd further argues that the cases cited by the Dawkinses for the proposition that evidence of similar transactions are admissible to prove fraudulent intent are distinguishable *1236 from this case, as Redd received no benefit from the sale of the house to the Dawkinses and had no reason to commit fraud against them.
In determining whether there was an abuse of discretion it is helpful to consider guidelines used in applying that discretion. Those guidelines have been described as follows:
[A] trial court's discretion in the discovery area is generally guided by the principles that (a) the court follow the general policy that discovery be encouraged, (b) limitations on discovery should be respected but not extended, (c) while the exercise of discretion depends on the parties' factual showings disputed facts should be construed in favor or discovery, and (d) while the importance of the information must be weighed against the hardships and cost of production and its availability through other means, it is preferable for the court to impose partial limitations on discovery rather than an outright denial. Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face.
23 Am Jur 2d, Depositions and Discovery, § 5 (1983) citing Greyhound Corp. v. Superior Court, Merced County, 56 Cal.2d 355, 15 Cal. Rptr. 90, 103-104, 364 P.2d 266, 279-280 (1961). This is an apt description, despite the fact that the California court, which is its genesis, viewed That state's discovery provisions as more liberal than their federal counterpart. 15 Cal. Rptr. at 98, 364 P.2d at 274.
The trial court finding that the Dawkinses' discovery request was outside the scope of permissible discovery is clearly erroneous. Evidence of similar occurrences is relevant and admissible to show absence of mistake or accident, plan or intent. Miss. R.Evid.Rule 404(b). We have looked to previous occurrences to establish intentional wrong or gross negligence, see, e.g., Mutual Life Ins. Co. of New York v. Wesson, 517 So.2d 521 (Miss. 1987) and recently reversed an award of punitive damages due to the absence, among other things, of any showing that the occurrence in question was so typical of the defendant's operations as to raise an inference of intentional wrongdoing. Universal Life Ins. Co. v. Veasley, 610 So.2d 290 (Miss. 1992).
We conclude that the trial court abused its discretion in failing to compel an answer to the Dawkinses' Interrogatory Number 4. As noted by another court in a similar situation:
Erroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing it is harmless. Here, since we cannot determine from the record whether the requested documents might have changed the result in this trial, we cannot say the error was harmless.
Weahkee v. Norton, 621 F.2d 1080, 1083 (10th Cir.1980). Accordingly, we reverse and remand for further proceedings during which the Dawkinses may have the discovery requested. We are, of course, not in a position to determine whether the information to be developed will warrant a new trial as to the issues of fraud, gross negligence and punitive damages, and we, therefore, leave that determination to the sound discretion of the trial court in accordance with our rules of civil procedure. Compare, Id., 1083-84 (Where case tried without a jury trial court instructed to allow the discovery and "make such additional or substitute findings as are necessary or appropriate.")
REVERSED AND REMANDED.
DAN M. LEE, P.J., and PRATHER, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., concurs in result only.
HAWKINS, P.J., dissents with separate written opinion, joined by ROY NOBLE LEE, C.J.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
*1237 HAWKINS, Presiding Justice, dissenting:
I respectfully dissent. The circuit judge did not err in his discovery ruling, because there was no showing that the answer had any relevancy to the issue before the court in this case.
ROY NOBLE LEE, C.J., joins this opinion.