# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00907-SCT

*MISSISSIPPI VALLEY GAS COMPANY*

*v.*

*THE ESTATE OF SIDNEY WALKER, NANCY WALKER, MAMIE DUREN, SHERMAN ALDRIDGE, ANNIE FAIR, EARTHLENA DAVIS, DOROTHY GLENN, THE ESTATE OF ISIAH PRAYER, ANNIE B. SILLS, EXECUTRIX OF THE ESTATE OF HENRIETTA BILLINGSLEY, DECEASED; TRACEE STANLEY, KARO LOGGINS, SR. AND NORA CORDER*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/05/95 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS Y. PAGE |
| | JAN F. GADOW |
| ATTORNEYS FOR APPELLEE: | DENNIS C. SWEET, III |
| | DEANNE M. MOSLEY |
| | HAROLD H. MITCHELL, JR. |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 8/6/98 |
| MOTION FOR REHEARING FILED: | 9/8/98 |
| MANDATE ISSUED: | 10/29/98 |

EN BANC.

SMITH, JUSTICE, FOR THE COURT:

¶1. On November 2, 1992, the Plaintiffs filed a complaint in the Circuit Court of the First Judicial District of Hinds County alleging negligence on the behalf of Mississippi Valley Gas in connection with its maintenance, operation, and repair of a natural gas pipeline in Greenwood, Mississippi. The Plaintiffs alleged that Mississippi Valley Gas' negligence resulted in a fire that caused the following damages: loss of their residences and contents; emotional distress; mental pain and suffering; inconvenience; and relocation expenses and related expenses. On December 1, 1992, Mississippi

Valley Gas filed its answer denying any liability. A trial was held on the merits, and the jury returned a verdict in favor of the Plaintiffs finding Mississippi Valley Gas was negligent and awarded damages in varying amounts for their homes, contents, mental anguish, pain and suffering, cost of repair, loss of rent, medical bills and rental expense for a total amount of $508,896.75.

¶2. On appeal, Mississippi Valley Gas argues the following: (1) evidence of negligence presented by the Plaintiffs was not legally sufficient; (2) the trial court erred in allowing the expert testimony of Phillip Bryant; (3) the Plaintiffs failed to offer legally sufficient evidence on the elements of and damages claimed for emotional distress; (4) the trial court erred in its refusal to clarify the form of the verdict; and (5) the trial court erred in refusing to allow certain testimony of Terry Ricks. The Plaintiffs contend that the above assignments of error are without merit.

## FACTS

¶3. On Saturday, May 2, 1992, the City of Greenwood was demolishing vacant, dilapidated houses on the block of 300 Ash Street. Around 4:30 or 5:00 that afternoon, Herbert Davis, an employee of the City of Greenwood, was operating an excavator near the rear of 318 Ash Street when he accidentally hit an underground gas pipeline. Approximately two feet of the gas pipeline was pulled above ground and started blowing gas. Davis borrowed one of the residents' telephone and attempted to call Mississippi Valley Gas (hereinafter "Valley Gas"). Davis contacted Charles Reed, a service representative for Valley Gas, and Reed arrived on the scene to repair the leak in approximately ten to fifteen minutes.

¶4. Upon arrival, Reed repaired the blowing leak by cutting four feet of one-inch pipe off of the damaged line and placing a one-inch night cap on the pipeline. After capping the line, Reed performed a soap test on the cap to determine whether gas was still leaking from where he placed the cap on the damaged pipeline, and the test resulted in the finding of no leak at the cap. Additionally, Reed stayed at the scene for fifteen minutes and walked along the remaining underground portion of the damaged line conducting a "nose" test in order to detect any other leaks, and Reed did not smell any scent of gas. Reed, however, did not perform a CGI (Combustible Gas Indicator) test or a flame pack survey in order to detect any other underground leaks. After leaving the leak site, Reed returned to the Valley Gas office and filled out a leak ticket listing the reported leak as a Priority 1 and classified it as a Class A leak which is described as "first priority, scheduled repair required, not hazardous at the time of the classification." Reed additionally left a "trouble ticket" on the desk of his supervisor to have the service to this line disconnected.

¶5. After the leak was repaired, residents testified that the smell of gas was still present in the area throughout the weekend. Some residents testified that Valley Gas was called and that the smell of gas was reported to Valley Gas. Other residents, who believed that the leak had been repaired by Valley Gas, testified that they did not call Valley Gas after Reed repaired the leak. Then, on May 4, 1992, residents heard a loud noise similar to the sound of thunder, a bomb, or a stick of dynamite, and a fire broke out in the general area where the City of Greenwood had been destroying the old, vacant houses. The fire spread rapidly along the block and destroyed numerous houses in its path.

¶6. On November 2, 1992, the Plaintiffs filed a complaint in the Circuit Court for the First Judicial District of Hinds County alleging negligence on behalf of Valley Gas in connection with its maintenance, operation, and repair of a natural gas pipeline in Greenwood, Mississippi. The Plaintiffs

alleged that Valley Gas' negligent maintenance and operation of the natural gas pipeline resulted in a fire that caused the following damages: loss of their residences and contents; emotional distress; mental pain and suffering; inconvenience; relocation expenses and related expenses. On December 1, 1992, Mississippi Valley Gas filed its answer denying any liability. A trial was held on the merits, and the jury returned a verdict in favor of the Plaintiffs finding Mississippi Valley Gas was negligent and awarded damages in varying amounts for their homes, contents, mental anguish, pain and suffering, cost of repair, loss of rent, medical bills and rental expense for a total amount of $508,896.75. The jury, however, did not award punitive damages to the Plaintiffs after finding that Valley Gas was at fault. Following the jury's verdict, Valley Gas filed a Motion for Judgment Notwithstanding the Verdict and as a Matter of Law, or in the Alternative, for a New Trial, or further in the Alternative, for a Remittitur. However, the trial court denied Valley Gas' Motion for Judgment Notwithstanding the Verdict, for New Trial, and for Remittitur.

¶7. Aggrieved by the trial court's decision, Valley Gas appeals to this Court and cites the following issues:

**I. WHETHER THE PLAINTIFFS FAILED TO OFFER SUFFICIENT EVIDENCE OF NEGLIGENCE.**

**II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE EXPERT TESTIMONY OF PHILLIP BRYANT.**

**III. WHETHER THE PLAINTIFFS FAILED TO OFFER LEGALLY SUFFICIENT EVIDENCE ON THE ELEMENTS OF AND DAMAGES CLAIMED FOR EMOTIONAL DISTRESS.**

**IV. WHETHER THE TRIAL COURT ERRED IN ITS REFUSAL TO CLARIFY THE FORM OF THE VERDICT.**

**V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW TESTIMONY OF TERRY RICKS.**

### DISCUSSION OF LAW

**I. WHETHER THE PLAINTIFFS FAILED TO OFFER SUFFICIENT EVIDENCE OF NEGLIGENCE.**

¶8. Valley Gas contends that the Plaintiffs failed to make a jury issue on negligence because they failed in the burden of proof on the elements of both breach and proximate cause. Furthermore, Valley Gas contends that the trial court erred in denying its Motion for JNOV and/or in denying its peremptory instruction, D-1. The Plaintiffs assert that they provided legally sufficient evidence of negligence and that the verdict of the jury should be affirmed.

¶9. When reviewing the trial court's denial of a Motion for Judgment Notwithstanding the Verdict, this Court's scope of review is limited as follows:

Where, as here, the trial judge has refused to grant a motion for JNOV, we examine all of the

evidence--not just evidence which supports the non-movant's case--in the light most favorable to the party opposed to the motion. All credible evidence tending to support the non-movant's case and all favorable inferences reasonably drawn therefrom are accepted as true and redound to the benefit of the non-mover. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.

*C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1098 (Miss. 1992) (citing *Royal Oil Co. v. Wells*, 500 So. 2d 439, 442 (Miss. 1986); *Stubblefield v. Jesco, Inc.*, 464 So. 2d 47, 54 (Miss. 1984); *City of Jackson v. Locklar*, 431 So. 2d 475, 478 (Miss. 1983); *Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652, 657 (Miss. 1975)). Furthermore, "[t]he rule in this state is that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal and supported unless manifest error appears or unless its action in sustaining the motion manifests an abuse of discretion." *Mississippi State Highway Comm'n v. Hancock*, 309 So. 2d 867, 871 (Miss. 1975).

¶10. In order to support a finding of liability on the part of Valley Gas, the Plaintiffs were required to prove each of the basic elements of negligence, i.e., duty, breach, proximate cause, and damages, by a preponderance of the evidence. *See **Hardy v. K Mart Corp.***, 669 So. 2d 34, 37-38 (Miss. 1996) (citing *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990) (citing *Phillips v. Hull*, 516 So. 2d 488, 491-92 (Miss. 1987))). In the instant case, Valley Gas admits that it owed a duty to exercise reasonable care in the inspection and repair of the subject gas line under the same or similar circumstances. Valley Gas also admits that certain damages were suffered by the Plaintiffs as a result of the subject fire. Therefore, the only questions that remain before this Court is whether the evidence presented, viewed in the light most favorable to the Plaintiffs, is sufficient to show that there was a breach of the duty owed by Valley Gas and that such breach was the proximate cause of the damages suffered by the Plaintiffs.

¶11. A. K. Rosenhan, expert witness for the Plaintiffs, testified that Charles Reed's actions in inspecting and repairing the gas leak were not reasonably sufficient under the circumstances. Reed testified that when he arrived at the scene he repaired the blowing leak by cutting four feet of the pipe off and placing a one-inch night cap on the broken line to stop the leak. Reed further testified that he performed a "bubble test" or "soap test" to detect whether the line was still leaking around the area where the one-inch night cap was placed. Reed also testified that for fifteen minutes after capping the pipeline that he walked along the one-inch line back to the main line conducting a smell test to determine whether there were any other leaks.

¶12. However, Valley Gas' service procedures required the following procedure for outside gas leaks:

Gas Outside. The first consideration is to be certain that the gas is not also migrating inside. Use the leak machine and your nose. If gas is found or suspected to be inside, take the action discussed under "Gas Inside," above. The hazard from gas outside is fire. Persons, property and source of ignition should be removed and kept away.

Reed testified that he had a leak machine, the CGI machine, with him at the scene but that he did not use it because he did not believe it was necessary. Rosenhan testified that in addition to capping the broken pipeline that a leak test with the CGI machine should have been conducted.

¶13. Thus, the Plaintiffs satisfied their burden to provide evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might conclude that there was a breach of the duty owed by Valley Gas for its employee's failure to perform a leak test for the detection of any underground leaks.

¶14. Next, the question remains of whether there was sufficient evidence to prove that the breach of the duty owed by Valley Gas was the proximate cause of the damages suffered by the Plaintiff's. First, the evidence in the instant case showed that on May 2, 1992, a City of Greenwood employee, Herbert Davis, accidentally hit an underground natural gas pipeline thus breaking the gas line and pulling it two feet above ground with it blowing gas. Charles Reed was contacted to come out and repair the gas line, and after performing a soap test on the capped line and a nose test along the underground portion of the broken line, Reed was satisfied that the leak was repaired and left the scene. Then, on May 4, 1992, a fire broke out in the area where the pipeline was broken and destroyed many of the residents' surrounding houses. Several residents testified that before detecting the fire that they heard a loud noise similar to the sound of thunder, a bomb going off, or a stick of dynamite exploding. Residents in the area testified that for the two days following the repair of the broken pipeline and before the start of the fire on May 4 that they smelled gas.

¶15. Rosenhan, expert witness for the Plaintiffs, testified that in his expert opinion the cause of the fire on May 4 was natural gas. Rosenhan testified that there was

> a leak over a couple of days duration that built up to a concentration that was capable of being ignited. . . . Any number of things can ignite a cloud of gas. But the point is that gas had to be underground to start with, to build up and it had to be concentrated at some point in somewhat of an enclosure, not out in the middle of the yard. But that is based on the physical facts that I saw, the witness statements as they've described the initiation of the fire, and the spread of the fire is all consistent with that scenario.

In addition, the Plaintiffs' other expert witness in fire origin and cause, Dave Berry, Jr., testified that "the fire was a result of the rapid ignition of natural gas in the area of the 318 Rear Ash." Berry stated that all of the following were taken into consideration to reach this opinion: "talking to witnesses in the area, the descriptions that they gave describing the explosion, the fire, the rapid spread of it, [and] the conditions that had existed a couple of days prior to the fire."

¶16. Valley Gas, however, contends that the Plaintiffs' expert witnesses' opinions were nothing more than mere speculation and that they failed to remove the inference of causation from the realm of conjecture. Valley Gas bases its contention on the expert witnesses' failure to identify a source of ignition. Valley Gas also relies on positive testimony that there was no underground leak following the capping of the blowing leak and that the results of a flame pack survey conducted after the fire showed no leak.

¶17. Valley Gas asserts that the case sub judice is substantially similar to ***Rudd v. Montgomery Elevator Co.***, 618 So. 2d 68 (Miss. 1993), and that as a result, its motion for JNOV should have

been sustained. In *Rudd*, a passenger was injured in an elevator accident and filed a personal injury action alleging negligence against Montgomery Elevator Company in its maintenance of the elevator. *Rudd*, 618 So. 2d at 70-71. The elevator accident occurred several hours after a service call by one of Montgomery's agents. *Id.* at 70. The Court held that in order "[t]o make a jury issue on liability . . . it was incumbent upon Rudd to establish by competent evidence that Montgomery was somehow negligent in its maintenance and repair of the elevator and that this negligence caused it to malfunction that day." *Id.* at 72.

¶18. Cunningham, Rudd's expert witness, testified that "the cause of the malfunction was a misalignment of a roller at the fourth floor, which would have been obvious to Hincks," Montgomery's service agent. *Id.* In forming this opinion, Cunningham's sole basis was a conjecture arising from inspecting the elevator a year and a half following the incident, examining the maintenance and repair tickets, and the testimony of Hincks. *Id.* at 73. However, Hincks gave positive testimony that the rollers were in alignment when he serviced the elevator, that the elevator operated smoothly for over half an hour inspection and continued to operate smoothly, and that he did find a misalignment at the fourth floor level the next day. *Rudd*, 618 So. 2d at 73. The Court, however, found that there was nothing more than pure speculation that Hincks somehow missed this misalignment the previous day. *Id.* The Court stated that "[a]gainst such conjecture was Hincks's positive testimony there was no misalignment on November 11, and the fact that the elevator continued to operate smoothly without mishap for at least another eighteen to twenty hours." *Id.* (citing *Samuels v. Mladineo*, 608 So. 2d 1170 (Miss. 1992)). The Court, affirming the trial court's sustaining of Montgomery's motion for JNOV, stated:

> It might very well be true that Hincks somehow missed seeing a misalignment of the roller on November 11, just as it might be true that Montgomery could have rendered better maintenance and repair service which would have detected and prevented whatever it was that caused the malfunction on November 11. It was incumbent upon Rudd, however, to offer something beyond pure speculation that there was negligence of this nature and that it in fact caused the malfunction. Cunningham's testimony with all reasonable inferences based thereon, carries us no further than simple speculation.

*Id.* at 73.

¶19. Valley Gas contends that the case sub judice is analogous to *Rudd*. Valley Gas asserts that the Plaintiffs' expert witnesses' opinions are based on nothing more than speculation and conjecture arising from examinations of the grossly disturbed scene, some six days after the fire for Rosenhan; review of depositions, statements, reports, videos and photographs provided by counsel for Plaintiffs; and conversations with the Fire Marshall and witnesses. Valley Gas further asserts that there was positive testimony from Reed that a fifteen minute inspection detected no underground leak following the capping of the blowing leak. Valley Gas also contends that following the fire, a flame pack survey found no leak.

¶20. Plaintiffs, however, contend that the case sub judice is different from *Rudd* because there was evidence that Reed was negligent by not conducting a leak test with a CGI machine to detect for underground leaks which was required by Valley Gas' own maintenance procedures. Plaintiffs also assert that Valley Gas was negligent in failing to respond before the fire to the "trouble ticket" to kill

service to the damaged line left by Reed two days before the fire. Plaintiffs assert that they submitted legally sufficient evidence of negligence and that the jury's verdict should be affirmed.

¶21. This Court has additionally held that "negligence may be proved by circumstantial evidence where the circumstances are such as to remove the case from the realm of conjecture and place it within the field of legitimate inference." *Kussman v. V & G Welding Supply, Inc.*, 585 So. 2d 700, 703 (Miss. 1991) (citing *Cadillac Corp. v. Moore*, 320 So. 2d 361, 366 (Miss. 1975)); *see also Hardy*, 669 So. 2d at 38; *Brown Oil Tools, Inc. v. Schmidt*, 246 Miss. 238, 246, 148 So. 2d 685, 688 (1963); *Palmer v. Clarksdale Hosp.*, 206 Miss.680, 698, 40 So. 2d 582, 586 (1949). The rule regarding the proof of causation from circumstantial evidence is set forth in 57A Am. Jur. 2d *Negligence* § 461 which states:

> Proof of the necessary factual causal connection may be by either direct or circumstantial evidence, but in the event the latter is used, it must be sufficient to make plaintiff's asserted theory reasonably probable, not merely possible, and more probable than any other theory based on such evidence, and it is generally for the trier of fact to say whether circumstantial evidence meets this test.

57A Am. Jur. 2d *Negligence* § 461 (1989) (footnotes omitted). In addition, when inferences of negligence can be drawn from circumstantial evidence is addressed further in 57A Am. Jur. 2d *Negligence* § 462 which provides as follows:

> In the absence of direct or specific positive evidence, negligence may be inferred from the totality of the circumstances surrounding injury, if not from the fact of injury itself. However, while inferences of negligence may be drawn from circumstantial evidence, those inferences must be the only ones which reasonably could be drawn from the evidence presented, and if the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts. Where plaintiff in a negligence action has only presented proof that the actual cause was one of a number of possibilities, to enable an inference to be drawn that any particular cause is probable, the other causes must be eliminated. Thus, when the evidence shows that it is just as likely that accident might have occurred from causes other than defendant's negligence, the inference that his negligence was the proximate cause may not be drawn.

57A Am. Jur. 2d *Negligence* § 462 (1989) (footnotes omitted). Furthermore, this Court "has also had occasion to observe that it is only in rare and exceptional cases that a civil case depending upon circumstantial evidence should be taken from the jury." *BFGoodrich, Inc. v. Taylor*, 509 So. 2d 895, 904 (Miss. 1987) (citing *Smith v. Estate of Gilbert*, 498 So. 2d 823 (Miss. 1986); *Douglas v. Great Atl. & Pac. Tea Co.*, 405 So. 2d 107 (Miss. 1981); *Cameron v. Hootsell*, 229 Miss. 80, 90 So. 2d 195 (1956)).

¶22. We find that there was sufficient circumstantial evidence on the issue of negligence for the issue to be presented to the jury. On May 2, an underground gas pipeline was pulled above ground by a City of Greenwood employee operating an excavator, and the broken pipeline was blowing gas. Valley Gas' employee, Charles Reed, sufficiently repaired the blowing leak, but he failed to follow Valley Gas' own procedures and perform a leak test to detect for any underground leaks. Residents

testified that the smell of gas was in the area throughout the weekend after Reed repaired the blowing leak. Residents also testified as to hearing a loud noise comparable to a bomb or thunder before the fire began on May 4. As a result, we hold that the jury's verdict finding Valley Gas to be negligent should be affirmed and that the trial court did not err in denying Valley Gas' motion for JNOV because this Court's scope of review of a denial of a motion for JNOV requires that where

> there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.

*C & C Trucking Co.*, 612 So. 2d at 1098 (citations omitted).

### II. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE EXPERT TESTIMONY OF PHILLIP BRYANT.

¶23. Valley Gas contends that the trial court erred by allowing the expert testimony of the Plaintiffs' expert witness, Phillip Bryant, for appraisal values of the personal property of the Plaintiffs that was destroyed by the fire. Valley Gas asserts that the Plaintiffs failed to comply with the discovery rules regarding the seasonable supplementation of responses to its interrogatories by failing to provide the substance of the facts and opinions to which Bryant was to testify and a summary of the grounds for each opinion, and as a result, this case should be remanded. The Plaintiffs, however, contend that they met their duty of disclosure under the discovery rules because they disclosed Bryant's identity, the subject matter of his testimony, and by providing a summary of the damages suffered by each plaintiff, the substance of his testimony.

¶24. Rule 26(b)(4)(A)(i) of the Mississippi Rules of Civil Procedure provides the following:

> *Trial Preparations: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under subsection (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

> (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Miss. R. Civ. P. 26(b)(4)(A)(i). Rule 26(f)(1)(B) additionally provides that "[a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." Miss. R. Civ. P. 26(f)(1)(B). Furthermore, this same principle of a duty to seasonably supplement responses to interrogatories regarding expert testimony has been expressed by this Court as follows: "'a party must not only supplement interrogatories to reveal the identity of expert witnesses expected to be called at trial, but must also supplement interrogatories to reveal the substance of the testimony of such experts, if not stated in answers to the original interrogatories.'" *Hudson v. Parvin*, 582 So. 2d 403, 413 (Miss. 1991) (quoting *Square D Co. v. Edwards*, 419 So. 2d 1327, 1329 (Miss. 1982)).

¶25. "In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion." *Dawkins v. Redd Pest Control Co.*, 607 So. 2d 1232, 1235 (Miss. 1992) (citing *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1368 (Miss. 1990); *Clark v. Mississippi Power Co.*, 372 So. 2d 1077, 1080 (Miss. 1979)); *see also* *McCarty v. Kellum*, 667 So. 2d 1277, 1285 (Miss. 1995) (stating that "[t]he law within this jurisdiction allows a trial court 'wide' and 'considerable' discretion that is not to be disturbed unless this Court finds that there has been an abuse of the trial court's discretion"). This Court, in *Dawkins*, set forth the following general guidelines that should be followed in determining whether there has been an abuse of discretion by the trial court:

> [A] trial court's discretion in the discovery area is generally guided by the principles that (a) the court follow the general policy that discovery be encouraged, (b) limitations on discovery should be respected but not extended, (c) while the exercise of discretion depends on the parties' factual showings disputed facts should be construed in favor [of] discovery, and (d) while the importance of the information must be weighed against the hardships and cost of production and its availability through other means, it is preferable for the court to impose partial limitations on discovery rather than an outright denial.

*Dawkins*, 607 So. 2d at 1236 (citations omitted).

¶26. In the case sub judice, the trial court allowed the testimony of Bryant over the objection of Valley Gas that it was prejudiced by such testimony because the Plaintiffs did not seasonably supplement its interrogatories with respect to information regarding the substance of Bryant's opinion allowing Valley Gas ample time to prepare for trial. On November 18, 1994, Valley Gas filed a Motion to Strike Plaintiffs' Designation of Expert Witnesses or, Alternatively, for Continuance of Trial for Plaintiff's failure to designate its expert witnesses until October 24, 1994 where Valley Gas had specifically requested discovery through a specific interrogatory filed on January 12, 1993. In addition, Valley Gas filed Motions to Compel several of the Plaintiffs to answer certain interrogatories or supplement their responses thereto including specifically Interrogatory No. 6 which asked for information regarding experts consulted or retained for trial, such as the substance of the facts and opinions to which the expert was expected to testify and a summary of the grounds for each opinion. On December 6, 1994, the trial court granted Valley Gas' Motion for Continuance, and in response to the Valley Gas' Motions to Compel, the trial court ordered that the parties be allowed to depose each other's expert witnesses to complete discovery.

¶27. On October 24, 1994, the Plaintiffs provided to Valley Gas Bryant's identity as an expert witness to appraise the value of the personal property of the Plaintiffs which was lost as a result of the fire. The Plaintiffs also provided that Bryant's expert opinion would be based on his training and expertise as an appraiser, his review of Plaintiffs' interrogatory responses regarding items lost, and his discussions with the Plaintiffs. Then on May 2 and May 4, 1995, before the trial began on May 8, 1995, Plaintiffs sent through a letter and a facsimile transmission to Valley Gas the appraisal values of the Plaintiffs' personal property destroyed in the fire.

¶28. Valley Gas, however, contends that it was prejudiced and precluded from taking full advantage of cross-examination because it was not informed of what items of personal property that Bryant would testify as to its value nor the method which Bryant would use to place a value on the items of

personal property. In support of this prejudice, Valley Gas cites to **McCarty v. Kellum** for the following proposition: "It would seem to be a basic requirement that before a party can be afforded liberal cross-examination of an expert witness at trial, that party must be afforded the opportunity to discover a crucial expert's basis." **McCarty**, 667 So. 2d at 1286. However, Valley Gas was afforded the opportunity to discover this information when the trial court ordered that Valley Gas may depose the Plaintiff's expert witnesses. Thus, Valley Gas can not claim prejudice by Bryant's testimony where it was afforded the opportunity to depose Bryant but chose not to do so.

¶29. As a result, we hold that the trial court judge did not abuse his discretion in allowing the testimony of Bryant, and thus, this assignment of error is without merit.

### III. WHETHER THE PLAINTIFFS FAILED TO OFFER LEGALLY SUFFICIENT EVIDENCE ON THE ELEMENTS OF AND DAMAGES CLAIMED FOR EMOTIONAL DISTRESS.

¶30. Valley Gas contends that the Plaintiffs failed to offer legally sufficient evidence in order to recover damages for mental anguish. Valley Gas contends that at most its conduct was simple negligence and that an award of damages for emotional distress or mental anguish required a showing of some physical manifestation of emotional distress or medically cognizable emotional distress to support an award of damages. As a result, Valley Gas contends that the court erred by granting Instructions P-27A and P-30 because the evidence did not support the granting of such instructions.

¶31. The Plaintiffs, on the other hand, contend that there was sufficient evidence for the jury to award damages for emotional distress or mental anguish and that the jury's verdict should be upheld. The Plaintiffs contend that, under current caselaw, they were not required to prove an outward manifestation of mental anguish as long as the mental anguish is a natural and reasonably foreseeable consequence of the wrongful act.

¶32. In **Leaf River Forest Products, Inc. v. Ferguson**, this Court stated that where appellants question the sufficiency of the evidence supporting the verdict in favor of the appellees:

> The applicable standard of review may be found in **Munford, Inc. v. Fleming**, 597 So. 2d 1282, 1284 (Miss. 1992), which states that this Court should

> consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

**Leaf River Forest Prods., Inc. v. Ferguson**, 662 So. 2d 648, 659 (Miss. 1995) (quoting **Munford, Inc.**, 597 So. 2d at 1284).

¶33. This Court has held that "[m]ental anguish is a nebulous concept . . . and requires substantial proof for recovery." **Morrison v. Means**, 680 So. 2d 803, 805 (Miss. 1996). In **Morrison**, the Court

discussed the standard for recovery for mental anguish as follows:

> This Court has held that recovery for mental anguish can be allowable even when there is no presence of a physical injury.
>
> Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally--or even unintentionally yet the results being reasonably foreseeable--Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury.
>
> *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981). Stated another way, "the standard is whether defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River Forest Products, Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995). If there is outrageous conduct, no injury is required for recovery for intentional infliction of emotional distress or mental anguish. *Id.* If the case of ordinary garden variety negligence, the plaintiff must prove some sort of injury, whether it be physical or mental. *See* *Wirtz v. Switzer*, 586 So. 2d 775, 784 (Miss. 1991); and *Devers*, 405 So. 2d at 902. If the conduct is not malicious, intentional or outrageous, there must be some sort of demonstrative harm, and said harm must have been reasonably foreseeable to the defendant. *Strickland v. Rossini*, 589 So. 2d 1268, 1275 (Miss. 1991).

*Morrison*, 680 So. 2d at 806. Thus, in order to determine what level of proof that the Plaintiffs were required to meet, what type of conduct occurred between Valley Gas and the Plaintiffs must first be reviewed. *Id.*

¶34. Valley Gas asserts that at most that its conduct would be nothing more than simple negligence. The Plaintiffs, on the other hand, contend that Valley Gas' conduct at the least amounted to gross negligence, outrageous conduct, and/or reckless and wanton disregard for the safety of others. However, we find that a review of the conduct between Valley Gas and the Plaintiffs shows that Valley Gas' conduct could not have exceeded the level of simple negligence.

¶35. The evidence in the instant case shows that an underground pipeline was damaged by a City of Greenwood employee in which the pipeline was pulled above ground with a blowing leak. Valley Gas' service representative, Charles Reed, was contacted, and Reed responded to the accident scene within fifteen minutes. Upon his arrival, Reed capped the blowing leak and performed a soap test to determine whether gas was still leaking from the broken line. Then, Reed walked along the damaged line for fifteen minutes performing a nose test in an effort to detect any other underground leaks. However, Reed did not conduct a underground leak test employing the use of a leak machine as required by Valley Gas' maintenance procedures.

¶36. While Reed, with over twenty-five years of work experience with Valley Gas, believed that the nose test was sufficient and was all that was required for that type of leak, the jury found that Reed breached his duty by failing to conduct an underground leak test with a leak machine, but such conduct can not be said to amount to anything beyond the ordinary garden variety of negligence. We hold that Valley Gas' conduct "simply does not rise to the level of 'malicious, intentional, willful, wanton, grossly careless, indifferent or reckless.'" *Morrison*, 680 So. 2d at 806 (quoting *Leaf River*, 662 So. 2d at 659). Therefore, without culpable conduct higher than the ordinary garden variety of

negligence present, the Plaintiffs, in order to recover for emotional distress or mental anguish, had to show some "sort of demonstrative harm, and said harm must have been reasonably foreseeable to the defendant." *Morrison, 680 So. 2d at 806* (*citing* *Strickland v. Rossini*, 589 So. 2d 1268, 1275 (Miss. 1991)).

¶37. The Plaintiffs presented the following testimony with regard to emotional distress or mental anguish of each individual plaintiff. Plaintiff Mamie Duren testified that she was "nervous and sick" during the course of the fire and that losing everything she owned made her "feel real bad and sad." Plaintiff Nancy Walker said that she could not describe the feeling she experienced, but it was "a bad feeling." Plaintiff Annie Fair testified that the fire "scared me to death" and that she felt bad as a result of losing her things. Plaintiff Tracee Stanley testified that she was "sad because we had just moved in and I was wondering where I was going to go from there, me and my children." Ollie Aldridge, daughter of Plaintiff Sherman Aldridge, testified that the fire had a "bad effect on him because it was just like he was in another world and stuff like that. He just didn't act like himself. He didn't want to go home with any of my brothers or nothing. He just wanted to be with me, so I just kept him with me . . . [his mental condition] was a lot better then but now its worse." Plaintiff Glenn testified that when she saw the fire she was upset and hurt. Plaintiff Karo Loggins testified that the experience made him feel bad and that the loss was "just pain."

¶38. However, Plaintiff Earthlena Davis testified that she was scared of the fire and had to be taken to the hospital following the fire because of an already existing bad heart and nerves. Plaintiff Henrietta Billingsley, although deceased before trial, testified in her deposition that she went to her doctor after the fire because "it made [her] real nervous" and she "couldn't sleep at all . . . I could see that blaze all through the night." Her doctor gave her a prescription for her nerves. Finally, Plaintiff Nora Corder had to be taken to the hospital for smoke inhalation as a result of the fire. Corder also testified that it was a terrible feeling to watch her house burning.

¶39. This Court has consistently held that where a defendant's conduct constitutes nothing more than simple negligence and the plaintiff fails to produce any proof of an injury that the plaintiff has failed to produce evidence to warrant the recovery for emotional distress or mental anguish. *See Morrison*, 680 So. 2d at 807 (stating that plaintiff failed to present enough evidence to support recovery for mental anguish where only evidence was a loss of sleep and bad feelings); *Strickland*, 589 So. 2d at 1275-76 (holding evidence insufficient to support recovery for mental anguish where only evidence presented was that plaintiff was depressed, very upset, and not able to sleep); *see also Devers*, 405 So. 2d at 901-02 (holding that plaintiff not entitled to recovery for mental anguish where plaintiff "suffered no physical injury, developed no sickness, and no medically cognizable mental injury"). Therefore, we find, and Valley Gas concedes, that the only plaintiffs that presented sufficient evidence to even make a jury issue as to whether damages for mental anguish should be given were Plaintiffs Davis, Billingsley, and Corder, for they were the only plaintiffs to present evidence of a possible injury and not just feelings of depression.

¶40. Furthermore, Valley Gas contends that the trial court erred by granting Instructions P-27A and P-30. This Court has stated that in order "'[t]o be entitled to a jury instruction, the proponent must show that the proposed jury instruction is supported by the evidence and the instruction is the correct statement of the law.'" *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 721 (Miss. 1995) (quoting *Turner v. Temple*, 602 So. 2d 817, 823 (Miss. 1992); *Copeland v. City of Jackson*, 548

So. 2d 970, 973 (Miss. 1989)).

¶41. The trial court granted Instruction P-27A which provided the following:

> Should you find for the Plaintiffs in this case, you are instructed by the Court that in awarding such damages, if any, as you deem reasonable to the plaintiff(s), you may consider mental pain and anguish such as is shown by a preponderance of the evidence for the plaintiff(s) who sustained no bodily or physical injury only if you find by a preponderance of the evidence that:

> (a) The results of the conduct of the defendant and/or its employees and agents were reasonably foreseeable; and

> (b) The conduct of the defendant and/or its employees and agents evokes outrage or revulsion.

As apparent from the above discussion regarding the conduct of Valley Gas and its employees, this instruction should not have been given because the evidence at trial did not support a finding that Valley Gas' conduct evoked outrage or revulsion, and therefore, the trial court erred by granting Instruction P-27A.

¶42. The trial court additionally granted Instruction P-30 which provides as follows:

> Should you find for the Plaintiffs in this case, you are instructed by the Court that in awarding such damages, if any, as you deem reasonable to the plaintiff(s), you may consider mental pain and anguish such as is shown by a preponderance of the evidence for the plaintiff(s) who sustained bodily or physical injury.

Additionally, supported by the discussion above, we hold that the trial court correctly granted this instruction to the jury because there was sufficient evidence that Plaintiffs Davis, Billingsley, and Corder may have suffered some sort of bodily or physical injury as a result of the fire.

¶43. As a result, we find that the jury's verdict awarding damages for mental anguish as to all Plaintiffs, with the exception of Plaintiffs Davis, Billingsley, and Corder, was unsupported by any sufficient evidence. We affirm the jury's verdict as to Plaintiffs Davis, Billingsley, and Corder as being supported by sufficient evidence, and since the trial court erred in granting Instruction P-27A, we reverse and remand for a new trial as to damages only for the remaining Plaintiffs, i.e., Plaintiffs Duren, Aldridge, Fair, Glenn, Prayer, Stanley, Loggings, and the Walkers.

### IV. WHETHER THE TRIAL COURT ERRED IN ITS REFUSAL TO CLARIFY THE FORM OF THE VERDICT.

¶44. Valley Gas asserts that the jury's intent cannot be understood from the form of the verdict because the verdict was confusing and ambiguous, and therefore, the trial court erred by refusing to reform the form of the verdict. Valley Gas contends that the verdict should have reflected the specific dollar amount for each type of damages awarded to each plaintiff by the jury. The Plaintiffs, on the other hand, contend that the verdict was sufficient in form and was an intelligent answer to the issues submitted to the jury and expressed in such a manner that the Court should have no doubt as to their intent.

¶45. Miss. Code Ann. § 11-7-157 states, "No special form of verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein." Miss. Code Ann. § 11-7-157 (1972). This Court, in *Harrison v. Smith*, set fort the applicable test for determining whether a verdict is sufficient as follows:

> [T]he basic test with reference to whether or not a verdict is sufficient as to form is whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court. This well-established rule of law has long been recognized by this Court . . . .

*Harrison v. Smith*, 379 So. 2d 517, 519 (Miss. 1980) (quoting *Henson Ford, Inc. v. Crews*, 249 Miss. 45, 160 So. 2d 81, 85 (1964) (citations omitted)).

¶46. In *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), this Court addressed a challenge to a jury verdict that did not specifically state each amount awarded to the plaintiff for the different elements of damages claimed in the original complaint, but instead, the jury verdict awarded only a general sum of money for all damages. *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 263 (Miss. 1993). The Court held that it was well within the jury's province to award damages in this manner and explained that "[n]ot knowing what persuaded the jury to award Prestage the amount of money that it did, any attempt to now separate the award into specific elements of damage would be pure speculation on our part." *Prestage*, 617 So. 2d at 263-64.

¶47. In accordance with the relevant principles of law regarding the form of the verdict, the form of the verdict in this case was sufficient. The jury verdict awarded a lump sum of damages to each individual plaintiff, with the exception of a couple of joint awards, but did not apportion out the amount applicable to each type of damage awarded. We find that the form of the verdict was an intelligent answer to the issues presented to the jury and that the trial court could understand the jury's intent, and as a result, the trial court did not err by refusing to clarify the form of the verdict. *See Harrison*, 379 So. 2d at 519. Furthermore, it was within the jury's province to award damages in this manner. *See Prestage*, 617 So. 2d at 264.

¶48. However, as a result of finding that the jury's award of damages for mental anguish to all of the Plaintiffs was not supported by the evidence and in accordance with our holding in *Prestage* that any attempt to separate out the jury's award as to those Plaintiffs would amount to pure speculation, we accordingly reverse and remand for a new trial on the issue of damages only as to the Plaintiffs listed above.

### V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW TESTIMONY OF TERRY RICKS.

¶49. Valley Gas contends that it was reversible error for the trial court not to allow its expert witness, Terry Ricks, to testify about the facts on which he based his expert opinion. Valley Gas asserts that Ricks should have been allowed to testify with respect to a written statement by Roosevelt Roach about a statement made by an unidentified man to Ricks at the scene of the fire as part of the basis for his expert opinion about the cause of the fire. The Plaintiffs, however, assert that the statements are inadmissible hearsay and that if allowed into evidence, they would be unduly prejudicial to the

Plaintiffs.

¶50. In the instant case, the trial court judge did not allow Ricks to testify, regarding part of what he based his expert opinion that natural gas was not a cause of the accident, about a statement made by an unidentified man that there were some children playing in the abandoned house shortly before the fire broke out. On April 27, 1995, the Plaintiffs filed a Motion in Limine seeking to exclude Ricks' expert testimony because it was based on inadmissible hearsay, i.e., the statements of the unidentified man at the scene of the fire. On May 5, 1995, the Plaintiffs filed another Motion in Limine seeking to exclude the written statement of Roach and seeking the restriction of Ricks' testimony to prevent any mention of children playing in the abandoned house at the time the fire ignited. Then, at trial, Valley Gas did not ask any questions regarding the statements used as part of the basis for Ricks' expert opinion, but the Plaintiffs attacked the credibility of Ricks' expert opinion by questioning him whether he based his opinion on talking to any witnesses. Valley Gas, after redirect examination of Ricks, inquired of the trial court judge whether he had ruled on the Motion in Limine regarding the alleged hearsay, and the trial judge effectively granted the Motion in Limine by allowing Valley Gas to enter Ricks' deposition into evidence for identification purposes only.

¶51. This Court has held that "[t]he standard of review regarding admission [or exclusion] of evidence is abuse of discretion." *Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997). Rule 705 of the Mississippi Rules of Evidence, allowing for the disclosure of facts or data underlying expert opinion, provides:

> The expert may testify in terms of opinion or inferences and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Miss. R. Evid. 705. Further, Rule 703 of the Mississippi Rules of Evidence, regarding the basis of opinion testimony by experts, provides as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Miss. R. Evid. 703. This Court has allowed into evidence as a basis of an expert's opinion evidence that would otherwise be inadmissible hearsay. *See Hull v. State*, 687 So. 2d 708, 716-17 (Miss. 1996) (holding statements that expert used to base opinion on admissible where not offered to prove the truth of the matter asserted); *Slay v. Illinois Cent. Gulf R.R.*, 511 So. 2d 875, 879 (Miss. 1987) (holding trial court did not err by allowing expert to testify about statements made to him in forming his opinion where statements were not offered to prove the truth of matter asserted).

¶52. In *Morley v. Jackson Redevelopment Authority*, this Court addressed the issue of "whether the information relied on by an expert is admissible just by virtue of his reliance on it" in reaching his expert opinion. *Morley v. Jackson Redev. Auth.*, 632 So. 2d 1284, 1293 (Miss. 1994). In *Morley*, the Court held that the trial court erred by allowing into evidence hearsay statements used by an expert where the statements were used for nothing more than to bolster the expert's opinion. *Morley*, 632 So. 2d at 1294. In making its decision, the Court relied heavily on the case of *United States v.*

***Grey Bear*** which held that "while a witness may rely on information which is inadmissible in evidence, that does not give the witness the right to circumvent the rules of hearsay by giving statements which corroborate his view." ***Morley***, 632 So. 2d at 1294 (citing ***United States v. Grey Bear***, 883 F.2d 1382, 1392-93 (8th Cir. 1989)).

¶53. However, this Court, in ***Slay v. Illinois Central Gulf Railroad Co.***, held that the trial court did not err by allowing an expert to testify about statements made by employees of the Illinois Central Gulf as part of the basis for his opinion. ***Slay***, 511 So. 2d at 879. Where an objection was made that the statements were inadmissible hearsay, "the trial judge overruled the objection, finding Copeland's testimony admissible, since it was 'not for the purpose of proving the truth of what was told him, but for the purpose of showing that it was told to him, which led him to take certain other actions,' namely, to conduct his own test of the locomotive." ***Id.*** This Court held:

> Simply put, hearsay is "an out-of-court statement, not made under oath and not subjected to cross-examination, which is introduced for the truth of the matter asserted." Ellis & Williams, Miss. Evidence, § 8-1 (1983). Here, the trial judge properly ruled that Copeland's testimony, relating statements made by those present at McNamara's test, was introduced not to show the manner of McNamara's examination, but to explain the basis for his own test of the locomotive. Consequently, there was no error.

***Id.***

¶54. In the instant case, Valley Gas asserts that if the statements regarding the children playing in the abandoned house would have been allowed into evidence that the statements would not be hearsay because they would have been offered to further explain the basis of Ricks' expert opinion and not offered to prove the truth of the matter asserted. The Plaintiffs, on the other hand, contend that the statements, if allowed, would have enabled Valley Gas to present to the jury statements offered to prove the truth of the matter asserted.

¶55. We find that the trial court did not err by refusing to allow Ricks to testify about the statement made by the unidentified man about the children playing in the abandoned house before the fire because such testimony would not go to explain the basis of the expert's opinion but would be used to prove the truth of the matter asserted, i.e., that there were children playing in the abandoned house where the fire ignited. Therefore, the statements were inadmissible hearsay and properly excluded by the trial court. As a result, this assignment of error is without merit.

## CONCLUSION

¶56. We hold that: (1) the Plaintiffs presented sufficient evidence to warrant the issue of negligence to be presented to the jury; (2) the trial court did not commit reversible error by allowing the testimony of Phillip Bryant; (3) the Plaintiffs failed to present sufficient evidence to support each Plaintiffs' recovery of damages for mental anguish; (4) the trial court did not err in refusing to clarify the form of the verdict because it was sufficient in form; and (5) the trial court did not commit reversible error by refusing to allow Valley Gas' expert witness, Terry Ricks, to testify about the statements made by the unidentified man as part of the basis of his expert opinion because the statements were inadmissible hearsay and would have been offered to prove the truth of the matter asserted. We, therefore, affirm the jury's finding of negligence, affirm the jury's award of damages to

Plaintiffs Davis, Bilingsley, and Corder, but reverse and remand for a new trial as to the issue of damages only for the remaining Plaintiffs.

**¶57. AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**