# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-00265-SCT

*CHARLENE BILLIOT THOMAS*

**v.**

*BOYD BILOXI LLC*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2021 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| TRIAL COURT ATTORNEYS: | DAVID WAYNE BARIA |
| | EUGENE JOHN HOFFMAN, IV |
| | PATRICK R. BUCHANAN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | DAVID WAYNE BARIA |
| | EUGENE JOHN HOFFMAN, IV |
| ATTORNEY FOR APPELLEE: | PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 04/27/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Charlene Thomas sustained several injuries as a result of a fall she suffered while descending stairs leading to the pool deck of the IP Casino Resort Spa (the IP). In an amended complaint, Thomas asserted a negligence claim against Boyd Biloxi LLC (Boyd), owner of the IP, in the Harrison County Circuit Court. She alleged that Boyd had knowledge of a dangerous condition on the pool deck landing of its stairs and failed to warn its patrons

or fix the condition.

¶2. Following discovery, the trial court held that Thomas had failed to present sufficient evidence of causation and granted Boyd's motion for summary judgment. Thomas appealed. The Court of Appeals affirmed the trial court's judgment. ***Thomas v. Boyd Biloxi LLC***, No. 2021-CA-00265-COA, 2022 WL 1799140, at *9 (Miss. Ct. App. June 2, 2022).

¶3. We granted Thomas's petition for writ of *certiorari*. We hold that it was error for the trial court to grant summary judgment because genuine issues of material fact remain. Thus, we are constrained to reverse the judgments of the Court of Appeals and of the Harrison County Circuit Court and to remand this case to the Harrison County Circuit Court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶4. On July 14, 2016, Charlene Thomas checked into the IP with her sister Becky Landry and nephew Larry Kyle. Shortly after checking in, Thomas and her party went to the swimming pool area. Once in that area, they ascended the stairs that connected the tiled pool deck to the hot tub deck. Each stair had a nonslip tread on it.

¶5. Thomas soaked her feet in the hot tub for a few minutes before she and Kyle decided to get refreshments from the pool deck. Kyle descended the same stairs. He approached an attendant about ordering refreshments. Upon his return, he waited at the bottom of the stairs. Thomas dried off after exiting the hot tub. She then made her way down the right side of the stairs, holding the hand rail along the way. When she stepped from the final tread of the stairs

2

onto the lower pool deck landing, Thomas fell.

¶6.     While Thomas was awaiting medical care, several guests and employees congregated where she lay. Thomas was unable to move and remained on the pool deck surface until paramedics transported her to the hospital. Thomas suffered significant injuries, including two shattered bones in her right leg; a separate injury to her left leg; injury to her back and spine; and multiple other contusions.

¶7.     Thomas filed suit against IP Biloxi Hotel & Casino and Boyd Gaming Corporation. She alleged that the fall and her injuries were caused by negligence of the hotel and/or its employees. She averred that the hotel was negligent by not equipping the pool deck area directly below the stairs with a nonslip pad; not properly keeping the area clean and free from certain slippery materials; failing to warn of the hazard; and failing to have a properly trained employee on the scene. Thomas subsequently amended the complaint, removing the original named defendants and replacing them with Boyd Biloxi LLC (Boyd).

¶8.     Boyd answered the complaint and denied liability. Boyd deposed Thomas and her nephew Kyle. Boyd and Thomas each responded to the other's interrogatories.

¶9.     Boyd later moved for summary judgment, attaching as exhibits Thomas's interrogatory responses, excerpts from Thomas's and Kyle's depositions, photos of the stairs taken shortly after the fall, and surveillance footage of the fall. Boyd argued that Thomas had offered no proof of its negligence; that Thomas does not know what caused her fall; and that Thomas failed to prove that Boyd had knowledge of any hazardous condition on its pool

3

deck.

¶10.     Thomas responded and argued that genuine issues of material fact remained in the case. To support her position, Thomas submitted the full and complete transcripts from Kyle's and her depositions. Thomas also sought a continuance under Mississippi Rule of Civil Procedure 56(f) to conduct additional necessary discovery. She sought (1) to depose Karla Payne, the first employee to show up after Thomas's fall; (2) to depose Boyd's corporate representatives; (3) to depose employees of Boyd with knowledge of the area of the premises in question; (4) to inspect the premises with her expert; and (5) to require Boyd to produce the incident reports of the two prior falls it disclosed in its interrogatory responses.

¶11.     In an August 14, 2020 ruling, the trial court granted Thomas's Rule 56(f) motion in part. The ruling allowed Thomas to depose Payne and required Boyd to produce the incident reports of the two prior falls. The court denied the Rule 56(f) motion as to all other matters.

¶12.     Following Payne's deposition and Boyd's production of the incident reports, Boyd supplemented its motion for summary judgment. Boyd argued that Thomas had offered no proof that it had notice, prior to her falling, of any hazardous condition that caused or contributed to her fall. It also submitted a transcript of Payne's deposition.

¶13.     In response, Thomas asked the court to deny Boyd's motion for summary judgment. In support of her response, Thomas submitted an excerpt from Payne's deposition transcript, the two incident reports, Boyd's interrogatory responses, and an affidavit from an expert in

4

engineering with proficiency in slip-and-fall-related analyses.

¶14.    Ultimately, the trial court granted Boyd's motion for summary judgment, holding that Thomas "ha[d] not raised a genuine issue of material fact that any negligence on the part of Boyd caused her to slip and fall." Thomas filed a notice of appeal, and this Court assigned the case to the Court of Appeals, which affirmed the trial court's judgment. *Thomas*, 2022 WL 1799140, at *9. We granted Thomas's petition for writ of *certiorari*.

## STATEMENT OF THE ISSUES

¶15.    In her petition for writ of *certiorari*, Thomas presents two issues: (1) whether the trial court and the Court of Appeals properly weighed summary judgment evidence, and (2) whether the trial court and the Court of Appeals misinterpreted Rule 56(f) and Uniform Civil Rule of Circuit and County Court Practice 4.03. We limit our review to Thomas's challenge to the weighing of summary judgment evidence. *See* M.R.A.P. 17(h).

## STANDARD OF REVIEW

¶16.    "We review the grant of summary judgment de novo and will view the evidence 'in the light most favorable to the [nonmoving party].'" *Renner v. Retzer Res., Inc.*, 236 So. 3d 810, 814 (Miss. 2017) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013)). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" M.R.C.P. 56(c). If genuine issues of material fact exist, "the

5

lower court's decision to grant summary judgment will be reversed." ***Mabus v. St. James Episcopal Church***, 884 So. 2d 747, 756 (Miss. 2004) (quoting ***Corey v. Skelton***, 834 So. 2d 681, 684 (Miss. 2003)).

## DISCUSSION

### I. Whether the trial court and the Court of Appeals properly weighed summary judgment evidence.

¶17. On a summary judgment motion, Boyd, as the moving party, "bears the burden of *persuading* the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, [it] is entitled to judgment as a matter of law." ***Karpinsky***, 109 So. 3d at 88 (internal quotation mark omitted) (quoting ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1355 (Miss. 1990)). Thomas, meanwhile, "carries the burden of *producing* sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial." ***Id.*** at 89.

¶18. Boyd supports its motion for summary judgment by arguing that Thomas has not established two of the elements required to prevail on a claim of negligence: breach and causation. "When the moving party has supported its motion in accordance with Mississippi Rule of Civil Procedure 56, '[the nonmoving] party may not rest upon the mere allegations or denials of his pleadings; his response . . . must set forth specific facts showing that there is a genuine issue for trial.'" ***Buckel v. Chaney***, 47 So. 3d 148, 153 (Miss. 2010) (second alteration in original) (quoting M.R.C.P. 56(e)). "[S]ummary judgment 'is appropriate when the non-moving party has failed to "make a showing sufficient to establish the existence of

6

an element essential to the party's case, and on which that party will bear the burden of proof at trial.'"'" *Id.* (quoting *Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 832 (Miss. 2008)).

¶19. In her pleadings, answers to interrogatories, and deposition testimony, Thomas avers that a slippery area on the pool deck landing of the stairs caused her to fall; that the area constituted a dangerous condition; and that Boyd had knowledge of the dangerous condition. In support, she offered the depositions of Payne (Boyd's employee), Kyle, and herself; the incident reports of the two prior falls; and an affidavit from an expert in engineering with proficiency in slip-and-fall-related analyses.

## A.     The Evidence

### 1.     *Deposition Testimony*

¶20. Thomas, Kyle, and Payne testified that there was water present on the pool deck landing of the stairs where Thomas fell. Thomas testified that she only put her feet into the hot tub and that she dried off before descending the stairs to the pool deck. She knew the spot where she fell was wet because she remembers lying in water after the accident. When asked what caused her to fall, she testified it was a slippery floor. Kyle testified that he saw water pooled at the landing of the stairs. Payne confirmed that the landing of the stairs was wet when she arrived on the scene shortly after the fall.

¶21. Thomas and Kyle both testified that Payne was the first employee to arrive on the scene. They testified Payne stated to them she had been telling her supervisors that something

needed to be done about that particular slippery area. When asked whether she made those statements to Thomas, Payne testified, "I do recall talking to her about the slippery area where she had fallen . . . . And I remember saying, 'Yeah, they should have done something about this.' But I do not remember how I worded it, but I remember discussing that." Payne did not witness the fall.

¶22.    Payne testified that she was the lead pool attendant on the day of the accident. It was her duty to supervise the other attendants that worked during her shift. When asked if she knew of any areas on the pool deck that were more slick or slippery than other areas, Payne stated that the area where Thomas slipped was a known slippery area. "It was always slippery in that particular area."

¶23.    Payne also described a time when she saw children slip and fall in that particular area. She testified that she told her supervisors that the area was slippery and unsafe based on her observation of the children. She further described that area as "a puddle zone or embeveled. It would just – it would always hold water in that specific little area." That slippery area was "the only thing [she] could think of that was the reason why [Thomas] fell."

¶24.    Even though Thomas, Kyle, and Payne each testified that water was present at the time of Thomas's fall, the Court of Appeals, acting as factfinder, discounted this testimony and did not view it in the light most favorable to Thomas. *Thomas*, 2022 WL 1799140, at *7. The Court of Appeals found that the video surveillance footage attached to the record does not show puddles or pools of water at the base of the stairs. *Id.* It cited *Smith v. City of*

8

*Southaven*, 308 So. 3d 456, 465 (Miss. Ct. App. 2020), to support its holding. *Thomas*, 2022 WL 1799140, at \*7. The court in *Smith* applied the United States Supreme Court's "summary judgment standard where one party's version of events is 'blatantly contradicted' by objective evidence in the record." *Smith*, 308 So. 3d at 465 (quoting *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

¶25.   This Court has adopted this standard and applied it to videotape evidence, finding that "*Scott* thus informs our courts that where the record contains a videotape of disputed facts capturing the events in question, the courts should view the story as depicted by the videotape, *when one party's version is blatantly contradicted*, for the purpose of ruling on a summary judgment motion." *Duckworth v. Warren*, 10 So. 3d 433, 438 (Miss. 2009) (emphasis added) (citing *Scott*, 550 U.S. at 380-81). The one party's version must be "blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Scott*, 550 U.S. at 380.

¶26.   The presence of water testified to by Thomas, Kyle, and Payne, however, is not "blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Id.* Thus, the *Scott* standard, adopted by this Court in *Duckworth*, is not applicable to the evidence in this case. The video reveals that as Thomas was lying on the pool deck, she was surrounded by a discolored area. A reasonable jury could find that the discolored area is water, which would then support the deposition testimony. Therefore, the Court of Appeals erred by discounting this evidence rather than viewing it in the light most favorable to Thomas.

## 2.     *Incident Reports of Prior Falls*

¶27.    Thomas presented evidence of two prior falls involving the same stairs. In Boyd's responses to Thomas's interrogatories, Boyd disclosed that "between July 1, 2014 and July 14, 2016, there were two (2) incidents where guests fell on the stairs leading to the hot tub. No lawsuits were filed against [Boyd] regarding these incidents." Boyd was compelled by a ruling from the trial court to produce the incident reports of these two prior falls.

¶28.    The first report reveals that on June 17, 2016, a guest slipped and fell when he put his foot onto the pool deck tile from the stairs. He was going from the hot tub deck to the pool deck. He held the rail as he descended the stairs. The second report reveals that on June 23, 2016, a guest slipped and fell as she was descending the stairs from the hot tub deck to the pool deck. The trial court, however, did not consider these reports because it found that the prior falls were not substantially similar to Thomas's fall. Thus, the court found that the prior falls could not be used to show the existence of a dangerous condition or Boyd's knowledge of a dangerous condition. Similarly, the Court of Appeals found that "[t]here is insufficient information on the face of the reports to show that these prior falls occurred in the 'same manner and in the same location' as Thomas'[s] fall." *Thomas*, 2022 WL 1799140, at *5. This Court's decision in *Vivians v. Baptist Healthplex* is decisive on this matter.

¶29.    In *Vivians*, a man sued Baptist Healthplex for injuries he sustained upon slipping and falling on Baptist's therapy pool stairs. *Vivians v. Baptist Healthplex*, 234 So. 3d 304, 305-06 (Miss. 2017). Baptist moved for summary judgment, arguing that Vivians had failed to

10

present evidence of the existence of a dangerous condition. *Id.* at 306. Vivians responded by producing six reports of slip-and-fall incidents involving the therapy pool stairs. *Id.* The trial court granted summary judgment in favor of Baptist, and on appeal, "[t]he Court of Appeals affirmed, holding that the circumstances surrounding Vivians's fall were not substantially similar to the circumstances surrounding the slip and fall incidents prior to and subsequent to Vivians's fall." *Id.* This Court, in reversing the decisions of the trial court and of the Court of Appeals, found that all five slip-and-fall incidents occurred on the therapy pool stairs. *Id.* at 307. Moreover, three of the incidents involved individuals holding on to the railing. *Id.* Therefore, this Court held that "Vivians adduced ample evidence that his slip and fall on the Healthplex therapy pool steps was substantially similar to the subsequent slip and fall occurrences . . . ." *Vivians*, 234 So. 3d at 307.

¶30. Similarly, both of the incident reports in the record here reflect that the prior falls occurred on the same stairs used by Thomas while the individual was descending from the elevated hot tub deck to the lower pool deck. Additionally, one incident involved an individual who, like Thomas, was holding on to the hand rail. This individual also fell as he was transitioning from the stairs to the pool deck. Thomas has adduced ample evidence that these two prior incidents are substantially similar to her incident. Because these two incidents are substantially similar to Thomas's incident, they "may be used to show two things—the existence of a dangerous condition and [Boyd's] notice or knowledge thereof." *Yoste v. Wal-Mart Stores, Inc.*, 822 So. 2d 935, 936 (citing *Parmes v. Ill. Cent. Gulf R.R.*, 440 So. 2d

11

261, 264 (Miss. 1983)).

### 3. Expert Opinion

¶31.    Thomas attached an expert affidavit and opinion from John Laughlin, P.E., to rebut Boyd's application for summary judgment. Laughlin, an expert in the field of biomedical and mechanical engineering, has been performing slip-and-fall-related analyses since 1997. Laughlin reviewed both the deposition testimony given by Thomas, Kyle, and Payne and the surveillance footage in arriving at his opinion. He conducted a frame-by-frame analysis of the footage and charted Thomas's movements as she fell to the ground.

¶32.    Laughlin opined that Thomas's knee did not bend as she fell to the ground, which satisfied him that her fall was due to slipping, not a preexisting physiological condition. "Had Ms. Thomas'[s] fall been due to a pre-existing physiological condition which caused her knee or ankle to fail, buckling or bending at the joint would be expected. The surveillance video reveals Ms. Thomas'[s] knee and ankle do not buckle. Ms. Thomas'[s] leg motions are consistent with slipping."

### B.    Genuine Issues of Material Fact

¶33.    Thomas's negligence claim against Boyd is commonly known as a premises liability claim. "Premises liability is a 'theory of negligence that establishes the duty owed to someone injured on a landownder's premises as a result of "conditions or activities" on the land . . . .'" *Johnson v. Goodson*, 267 So. 3d 774, 777 (Miss. 2019) (alteration in original) (quoting *Doe v. Jameson Inn, Inc.*, 56 So. 3d 549, 553 (Miss. 2011)). As a theory of

12

negligence, premises liability requires the plaintiff to prove, by a preponderance of the evidence, that the defendant owed her a duty, that the defendant breached that duty, that the plaintiff suffered damages, and that the breach caused the plaintiff's damages. *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166 (Miss. 2011) (citing *Crain v. Cleveland Lodge 1532, Ord. of Moose, Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994)).

¶34.    All agree that Thomas was an invitee of Boyd. Boyd therefore owed Thomas a duty "to keep its premises in a reasonably safe condition and to warn . . . of dangerous conditions that are not readily apparent." *Clinton Healthcare, LLC v. Atkinson*, 294 So. 3d 66, 71 (Miss. 2019) (citing *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996)). For slip-and-fall cases, in particular, this Court has set forth the following standard:

> [F]or a plaintiff to recover in a slip-and-fall case, he must show the proprietor had actual knowledge of a dangerous condition, *or* the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, in that the proprietor should have known of the condition, *or* the dangerous condition was created through a negligent act of a store's proprietor or his employees.

*Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992). If the proprietor did not create the dangerous condition, the plaintiff must also show that the proprietor had "a sufficient opportunity to correct" the dangerous condition. *Karpinsky*, 109 So. 3d at 89 (quoting *Miller v. R.B. Wall Oil Co., Inc.*, 970 So. 2d 127, 132 (Miss. 2007)). Accordingly, "[t]here is no liability for injuries, where the condition is not dangerous . . . ." *Venture, Inc. v. Harris*, 307 So. 3d 427, 433 (Miss. 2020) (second alteration in original) (quoting *Kroger, Inc. v. Ware*, 512 So. 2d 1281, 1282 (Miss. 1987), *overruled on other grounds by Tharp v.*

***Bunge Corp.***, 641 So. 2d 20, 23-24 (Miss. 1994)).

¶35. In its motion for summary judgment, Boyd alleged that Thomas failed to present sufficient evidence to support the breach and causation elements of her negligence claim. To establish a genuine issue of material fact as to these elements, Thomas must support her claim with "evidence upon which a fair-minded jury could return a favorable verdict." ***Sanderson Farms, Inc. v. McCullough***, 212 So. 3d 69, 74 (Miss. 2017) (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## 1.   *Breach*

¶36. On the issue of breach, Thomas must establish that a dangerous condition existed; that Boyd had knowledge of the dangerous condition; and that Boyd had an opportunity to correct the dangerous condition.[1] ***Karpinsky***, 109 So. 3d at 89 (quoting ***Miller***, 970 So. 2d at 132). Viewing the evidence in the light most favorable to Thomas, there is sufficient evidence upon which a fair-minded jury could conclude that Boyd breached its duty.

¶37. Thomas introduced deposition testimony showing that the pool deck area where she fell had water on it. The surveillance footage, viewed in the light most favorable to Thomas, likewise shows that the area where Thomas fell had water on it. Thomas also introduced testimony showing that the area was slippery and dipped inward. And while water may be

---

[1] Thomas does not contend that Boyd created the dangerous condition. Instead, she argues that Boyd had knowledge of the dangerous condition. Therefore, she is required to show Boyd had "a sufficient opportunity to correct" the dangerous condition. ***Karpinsky***, 109 So. 3d at 89 (quoting ***Miller***, 970 So. 2d at 132).

14

a danger "which [is] usual and which customers normally expect to encounter" on a deck near a swimming pool, a reasonable jury could find that an area that holds water due to how it dips inward and that is slippery due to the substances it holds is a dangerous condition. *Venture, Inc.*, 307 So. 3d at 433 (quoting *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995)). The two prior falls described in the incident reports may be used by the jury to infer that a dangerous condition existed on the pool deck below the stairs. *See Yoste*, 822 So. 2d at 936 (citing *Parmes*, 440 So. 2d at 264).

¶38.    The two prior falls may also be used to establish Boyd's knowledge of the dangerous condition. *See id.* (citing *Parmes*, 440 So. 2d at 264). Boyd's knowledge is further supported by Payne's testimony that she informed her superiors about the dangers of that area and about prior instances of patrons slipping and falling there. And, based on the time between the prior falls and Thomas's fall, a reasonable jury could find that Boyd had sufficient time to correct the condition.[2]

### 2.    Causation

¶39.    On the issue of causation, Thomas must establish that Boyd's negligence was "both the cause in fact and legal cause of [her injuries]." *Martin v. St. Dominic-Jackson Mem'l Hosp.*, 90 So. 3d 43, 48 (Miss. 2012) (internal quotation mark omitted) (quoting *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007)). "'Cause in fact' means that, but

---

[2]According to the incident reports of the two prior falls, one guest fell on June 17, 2016, and one guest fell on June 23, 2016. Thomas fell on July 14, 2016.

15

for the defendant's negligence, the injury would not have occurred." ***City of Jackson v. Spann***, 4 So. 3d 1029, 1033 (Miss. 2009) (quoting ***Glover***, 968 So. 2d at 1277)). "Once cause in fact is established, the defendant's negligence will be deemed the legal cause so long as the damage 'is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act.'" ***Id.*** (quoting ***Glover***, 968 So. 2d at 1277)). Viewing the evidence in the light most favorable to Thomas, there is sufficient evidence upon which a fair-minded jury could find that Boyd's breach caused Thomas's injuries.

¶40.    Thomas may establish causation through the use of circumstantial evidence. That evidence, however, "must be sufficient to make [her] asserted theory reasonably probable, not merely possible, and more probable than any other theory based on such evidence[.]" ***Hardin v. Town of Leakesville***, 345 So. 3d 557, 566 (Miss. 2022) (quoting ***Miss. Valley Gas Co. v. Est. of Walker***, 725 So. 2d 139, 145-46 (Miss. 1998), *overruled on other grounds by* ***Adams v. U.S. Homecrafters, Inc.***, 744 So. 2d 736 (Miss. 1999)). "[I]t is generally for the trier of fact to say whether circumstantial evidence meets this test." ***Id.*** (internal quotation mark omitted) (quoting ***Miss. Valley Gas Co.***, 725 So. 2d at 145-46). And "only in rare and exceptional cases . . . [should] a civil case depending upon circumstantial evidence . . . be taken from the jury." ***Miss. Valley Gas Co.***, 725 So. 2d at 146 (internal quotation mark omitted) (quoting ***BFGoodrich, Inc. v. Taylor***, 509 So. 2d 895, 904 (Miss. 1987)).

¶41.    The deposition testimony from Thomas, Kyle, and Payne and the surveillance footage

16

support the existence of water in the area where Thomas fell. Thomas's and Payne's deposition testimony also support the existence of a slippery condition in that area. Additionally, the expert opinion and affidavit submitted by Thomas supports that slipping caused her fall and negates a finding that a physiological condition caused Thomas's fall.

¶42. Thomas has adduced sufficient evidence from which a reasonable jury could find that her theory of liability is more probable than any other theory based on the evidence. A jury could reasonably find that but for the existence of the dangerous condition, Thomas would not have suffered a fall or the injuries she claims. Likewise, a slip and fall is the type of harm that Boyd should reasonably foresee resulting from its negligent acts or failure to act in relation to the deck landing area.

## C. Boyd's Summary Judgment Motion

¶43. At the summary judgment stage, the evidence shall be viewed "in the light most favorable to the [nonmoving party,]" Thomas. *Renner*, 236 So. 3d at 814 (internal quotation mark omitted) (quoting *Karpinsky*, 109 So. 3d at 88). "If facts are in dispute, as they are in this case, it is not the province of the trial court to grant summary judgment thereby supplanting a full trial with its ruling." *Pollard v. Sherwin-Williams Co.*, 955 So. 2d 764, 769 (Miss. 2007) (quoting *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993)). And, contrary to the factfinding engaged in by both the Court of Appeals and the dissent, "[i]t is not the role of either the trial court or an appellate court to resolve genuine issues of material fact on a summary judgment motion." *Leflore Cnty. v. Givens*, 754 So. 2d 1223, 1231 (Miss.

2000), *overruled on other grounds by **Univ. of Miss. Med. Ctr. v. Easterling***, 928 So. 2d 815, 819-20 (Miss. 2006).

¶44.   Boyd filed a motion for summary judgment. It alleged that Thomas failed to present sufficient evidence to prove breach or causation. In response, Thomas put forth evidence showing there are genuine issues of material fact as to both. Therefore, the trial court erred by granting Boyd's motion for summary judgment.

## CONCLUSION

¶45.   Because genuine issues of material fact remain in this case, the trial court erred by granting Boyd's motion for summary judgment. Therefore, we reverse the judgments of both the Court of Appeals and the trial court. We remand this case to the trial court for further proceedings consistent with this opinion.

¶46.   **REVERSED AND REMANDED.**

**KITCHENS AND KING, P.JJ., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. GRIFFIS, J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN AND ISHEE, JJ.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶47.   I disagree with the majority that "genuine issues of material fact remain in this case[.]" Maj. Op. ¶ 45. First, the wet pool deck was not an unusual or unreasonably dangerous condition. Second, even assuming a dangerous condition existed, Charlene Billiot Thomas failed to prove that her injuries were caused by Boyd Biloxi LLC's negligence. Thus, I find summary judgment was properly granted. I therefore dissent.

18

¶48. It is undisputed that Thomas was an invitee at the time of her accident. "The duty of a business owner to an invitee is well-settled under Mississippi law and requires that the owner keep his premises in a reasonably safe condition." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (Miss. 2013) (citing *Miller v. R.B. Wall Oil Co.*, 970 So. 2d 127, 132 (Miss. 2007)). "Mississippi law further requires that when a dangerous condition exists that was 'created by someone not associated with the business, the *plaintiff must produce evidence* that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it.'" *Id.* (quoting *Miller*, 970 So. 2d at 132).

¶49. In her amended complaint, Thomas alleged the following:

> Thomas contends that the fall was caused by the clear negligence of [Boyd Biloxi] for not following particulars, to wit:
>
> a.) [n]ot properly equipping the base of the steps with a non-slip pad;
>
> b.) [n]ot properly keeping the area clean and free from algae, mildew or other slippery materials,
>
> c.) failing to post proper signage or warning regarding the hazard;
>
> d.) failing to have a properly trained employee on the scene.

But as the trial court noted,

> In her deposition, Thomas wholly abandoned any claim of lack of a non-slip pad, the existence of any algae, mildew or other substance, the lack of any signage or posted warning, and any improperly trained employee trying to get her up after the fall. There is no evidence of any algae, mildew or

19

slippery substance on the pool deck. Nor is there any evidence that any action of an employee *after* the fall in any manner caused or contributed to the fall. Nor is there any evidence that any employee was negligent after the fall or caused any injury to Thomas after the fall. Further, Thomas made no complaint about any existence or non-existence of non-slip pads. The photographs produced clearly show a warning sign on the wall of the steps advising patrons to use caution in the area.

At [her] deposition, Thomas'[s] claim became only one of a possible wet area. The only thing alleged in the Amended Complaint that might possibly cover this is the term "slippery materials."

Thus, Thomas's claim is that the area where she fell was wet.

¶50. But a pool area is expected to be wet. As the Court of Appeals noted,

The video evidence in this case is important to our decision. Standing water can be seen all around the pool, and dozens of people (adults and children) are seen navigating those large areas of water on the pool deck without any apparent difficulty. Water on a pool deck in and around pools is not an unusual condition. In *Venture Inc. v. Harris*, 307 So. 3d 427, 433 (¶¶ 24-25) (Miss. 2020), the Court explained:

"The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Fulton v. Robinson Indus. Inc.*, 664 So. 2d 170, 175 (Miss. 1995) (citing *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995)). "The owner of a business is not . . . liable for injuries caused by conditions which are not dangerous . . . ." *McGovern v. Scarborough*, 566 So. 2d 1225, 1227 (Miss. 1990) (quoting *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 476 (Miss. 1967)).

This Court has distinguished cases that "involved dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps" from those cases involving a "physical defect on the defendant's premises condition which may be found to be unusual and unreasonably dangerous . . . ." *Tate*, 650 So. 2d at 1351.

20

> **Obviously, the plaintiff must present evidence to prove the existence of a dangerous condition.** *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97-98 (Miss. Ct. App. 2010).

(Emphasis added). *Water on a pool deck is a condition one would normally expect to encounter on a business premises such as Boyd Biloxi's pool area.*

*Thomas v. Boyd Biloxi LLC*, No. 2021-CA-00265-COA, 2022 WL 1799140, at *6-7 (Miss. Ct. App. June 2, 2022) (emphasis added).

¶51.    I do not find that a wet pool deck constitutes a dangerous condition.  "[A] 'property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." *Stanley v. Boyd Tunica, Inc.*, 29 So. 3d 95, 97-98 (Miss. Ct. App. 2010) (quoting *Delmont v. Harrison Cnty. Sch. Dist.*, 944 So. 2d 131, 133 (Miss. Ct. App. 2006)).  "The owner of a business . . . is not liable for injuries caused by conditions which are not dangerous or which are or should be known or obvious to the customer." *Stanley v. Morgan & Lindsey, Inc.*, 203 So. 2d 473, 476 (Miss. 1967) (citing 65 C.J.S. *Negligence* § 63(130) (1966)).  "He is not required to keep the premises absolutely safe, or in such a condition that no accident could possibly happen to a customer." *Id.* (citing *Miami Coin-O-Wash, Inc. v. McGough*, 195 So. 2d 227 (Fla. 1967)).  Here, the fact that the area around a pool will be wet "should be known or obvious to the customer." *Id.* (citing 65 C.J.S. *Negligence* § 63(130)).  Indeed, Thomas acknowledged that a pool area may be wet.  Because Thomas failed to show that her injury was caused by a dangerous condition, summary judgment was proper.

¶52.    Alternatively, assuming a wet pool deck is sufficient to constitute a dangerous condition, there is no evidence that the alleged wet area caused Thomas's fall.  Thomas

21

acknowledged that she did not know whether or not she slipped in water. Thomas stated "that she remembers being wet while she was lying on the ground after the fall, but she does not remember seeing any puddle of water before she fell." ***Thomas***, 2022 WL 1799140, at *4. As the trial court noted, "Thomas could not identify any hazardous condition on the pool deck either by testimony or when shown photographs of the area."

¶53. Larry Kyle also testified that he did not know why Thomas fell. Kyle had walked through the same area where Thomas fell with no problems. And Kyle testified that there was nowhere on the pool deck where he stood that was slippery. The trial court noted the following timeline based on video surveillance of the accident:

> Kyle, upon viewing the video, testified that he had used the same side of the stairs going up to the hot tub at 7:03:19 of the video. He had no problems going up and noticed nothing on the deck. At 7:22:36, he had descended the stairs, having no problems, and walked away from the stairs. He believes that he went to ask if cards were accepted (presumably for the drinks). Just over three (3) minutes later, he walked along the side of the pool toward the hot tub stairs. At 7:26:16, he walked into the area where he says there was water. He agrees that he had no problems in that area. At 7:27:20, Kyle is in the exact spot at which Thomas slips. He is having no problems and says it is not slippery. Thomas then descends the steps and falls about twenty (20) seconds later.

Additionally, the Court of Appeals noted,

> The video shows that Kyle walked through the pool area leaving and returning to the stairs leading to the hot tub. In doing so, the video shows that Kyle walked through some of the largest pools of standing water that can be seen in the video. When he returned to the stairs, he stood there for well over a minute immediately preceding the fall, in the exact place at the base of the stairs where Thomas fell. Kyle testified that he saw water standing in the place where Thomas fell. . . .

22

. . . .

In the hour prior to the fall, the video shows that Kyle was the only person who stood at the base of the stairs, in the exact spot where Thomas fell, in the manner he described, after having been in the hot tub, and after having walked through large puddles of water around the pool itself.

. . . .

The video also reveals that more than thirty people, within the hour before Thomas'[s] fall, went up and down the stairs in question without any apparent difficulty. No one made any visible effort to avoid a pool of water at the base of the stairs. While there was mention of a shower next to the stairs, the video shows no one using the shower within the hour before the fall. Again, while the video shows obvious pools of water around the pool area, even using the zoom feature, no pools of water can be seen at the base of the stairs. After Thomas'[s] fall, while she is lying on the deck, people are walking all around her, and no one seems to be avoiding a water puddle. Using the zoom feature, again, the people walking around her do not seem to be walking in standing water.

. . . .

. . . The video in this case does not show puddles or pools of water at the base of the stairs. After the fall, people are not seen standing or walking through standing water at the base of the stairs.

. . . .

Finally, the video shows that the only difference between the time that the other thirty plus people walked up and down those stairs without any apparent difficulty and when Thomas came down the stairs and fell is that Kyle, after getting out of the hot tub, walked through the pools of water on the main pool deck and then stood in the exact place where Thomas fell for over a minute immediately before the fall. Again, according to [Boyd Biloxi employee Karla] Payne's deposition, she did not see any standing water by the stairs that day. If she or the other attendants had seen water there, she testified that she would have placed warning signs in the area. Based on the video, there was insufficient time for Payne or the other attendants to become aware of the

problem *if* any water problem at the base of the stairs was created by Kyle.

*Id.* at *4-5, *7 (emphasis added).

¶54.   "Negligence of the defendant and notice to him may be found from circumstantial evidence of adequate probative value." ***Elston v. Circus Circus Miss., Inc.***, 908 So. 2d 771, 775 (Miss. Ct. App. 2005).  "Stated differently, 'the plaintiff may prove circumstances from which the jury might conclude reasonably that the condition of the floor was one which was traceable to the proprietor's own act or omission.'" ***Id.*** (citing ***Winn-Dixie Supermarkets v. Hughes***, 247 Miss. 575, 585, 156 So. 2d 734, 736 (1963)).  But "the circumstantial evidence must be such that it creates a legitimate inference that places it beyond conjecture." ***Herrington v. Leaf River Forest Prods., Inc.***, 733 So. 2d 774, 777 (Miss. 1999) (citing ***Hardy v. K Mart Corp.***, 669 So. 2d 34, 38 (Miss. 1996)).

> [W]hile inferences of negligence may be drawn from circumstantial evidence, those inferences must be the only ones which reasonably could be drawn from the evidence presented, and if the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts.

***McCullar v. Boyd Tunica, Inc.***, 50 So. 3d 1009, 1014 (Miss. Ct. App. 2010) (quoting ***Miss. Valley Gas Co. v. Est. of Walker***, 725 So. 2d 139, 145 (Miss. 1998), *overruled on other grounds by* ***Adams v. U.S. Homecrafters, Inc.***, 744 So. 2d 736 (Miss. 1999)).

> Where plaintiff in a negligence action has only presented proof that the actual cause was one of a number of possibilities, to enable an inference to be drawn that any particular cause is probable, the other causes must be eliminated. Thus, when the evidence shows that it is just as likely that accident might have occurred from causes other than defendant's negligence, the inference that his

24

negligence was the proximate cause may not be drawn.

*Miss. Valley Gas Co.*, 725 So. 2d at 145-46 (quoting 57A Am. Jur. 2d *Negligence* § 462 (1989)), *overruled on other grounds by Adams*, 744 So. 2d 736.

¶55.   Here, as the trial court noted, "[t]he piece wholly missing is what caused Thomas to fall. . . . Thomas, Kyle and Payne can only guess, speculate or surmise that the area was wet or had puddling which caused the slip and fall. . . . There could also be many other reasons for the slipping and falling."

¶56.   The Court of Appeals elaborated, stating,

> In the present case, Thomas does not know why she slipped. She first said algae was to blame. Then she admitted that she did not see any algae but said the floor was slippery. When asked if she knew why the floor was slippery, she said she *assumed* it was water she slipped on because she got wet after the fall. Thomas'[s] inconsistent descriptions and uncertainty "fail to remove the case from the realm of conjecture and place it within the field of legitimate inference." *Parson v. Go Knightrider LLC*, 282 So. 3d 609, 618 (¶ 28) (Miss. Ct. App. 2019).

> . . . .

> . . . After reviewing the video, it is reasonable to infer that *if* Thomas'[s] fall was caused by a wet deck, it was Kyle's action that caused the deck to be wet at the spot where Thomas fell. That inference is supported by Payne's testimony that she had not seen any standing water at the base of the stairs before Thomas'[s] fall. Further, Thomas testified in her deposition that she had been on disability since 2014 with spinal stenosis, back problems, and neuropathy, which made it hard for her to walk. So for the trial court to infer from the evidence that Thomas got off balance and fell is also reasonable. In any event, pursuant to *McCullar* [*v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1014 (Miss. Ct. App. 2010)], it was Thomas'[s] burden to produce sufficient circumstantial evidence to show that *the only inference* that can be drawn from the evidence is that her fall was caused by the negligence of Boyd Biloxi. *Id.* Thomas simply did not meet that burden.

25

*Thomas*, 2022 WL 1799140, at *6, *8 (emphasis added).

¶57.   The majority finds that deposition testimony showed "that the pool deck area where [Thomas] fell had water on it." Maj. Op. ¶ 37.  It is true that Thomas, Kyle, and Payne all testified that there was water present on the pool deck where Thomas fell.  But Thomas *assumed* that there was water because she was wet after she fell.  Thomas specifically stated that she did not know if she slipped in water.  Kyle testified that there was water in the area where Thomas fell, but as the record reflects, Kyle, who was wet, had been standing where Thomas fell just before her fall.  And Payne confirmed the presence of water when she arrived on the scene *after* Thomas's fall.  Payne further confirmed that no one had reported a problem in that area before Thomas's fall.

¶58.   The majority further finds that deposition testimony showed that the area where Thomas fell "was slippery and dipped inward." Maj. Op. ¶ 37.  The majority concludes that "a reasonable jury could find that an area that holds water due to how it dips inward and that is slippery due to the substances it holds is a dangerous condition." Maj. Op. ¶ 37.  But Kyle, who was in the area just before Thomas's fall, testified that the area was not slippery.  And while Payne testified that the area was a slippery area, she confirmed that no one, including the other pool attendants, reported a problem in that area before Thomas's fall. Additionally, Payne was the only person to mention the inward dipping or "beveled" area.  Neither Thomas nor Kyle noted either before or after Thomas's fall that the area dipped inward or was beveled.  And it was not mentioned by John C. Laughlin in his expert report.  Despite her

26

testimony that this beveled area caused water puddles to form, Payne confirmed that she did not know if there was water that had puddled in that area before Thomas fell.

¶59.    The majority also finds that two prior falls in the area "may be used by the jury to infer that a dangerous condition existed on the pool deck below the stairs" and "may also be used to establish Boyd's knowledge of the dangerous condition." Maj. Op. ¶¶ 37, 38. But Payne testified that she did not see the two prior falls and did not know what caused them. And neither incident report notes the reason for the fall or any "slippery materials," water, or inward dipping. Additionally, as the trial court noted, "photographs produced clearly show a warning sign on the wall of the steps advising patrons to use caution in the area."

¶60.    As the nonmovant, Thomas "must bring forward '*significant probative evidence* demonstrating the existence of a triable issue of fact.'" *Newell v. Hinton*, 556 So. 2d 1037, 1042 (Miss. 1990) (quoting *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982)). "Furthermore, the plaintiff must show that the party charged is the party actually responsible for the wrong, with reasonable certainty or definiteness." *Young v. Wendy's Int'l, Inc.*, 840 So. 2d 782, 784 (Miss. Ct. App. 2003) (citing *Berry v. Brunt*, 252 Miss. 194, 172 So. 2d 398, 401 (1965)). "[I]t is not enough that this shall be left to conjecture or to inferences so loose that it cannot be dependently told where conjecture ceases and cogent inferences begins." *Id.* (internal quotation marks omitted) (quoting *Berry*, 172 So. 2d at 401).

¶61.    I agree with the trial court and the Court of Appeals that Thompson failed to raise a

27

genuine issue of material fact that any negligence on the part of Boyd Biloxi caused her to slip and fall. As a result, I find that summary judgment was properly granted. The trial court's judgment and the Court of Appeals' decision should be affirmed.

**COLEMAN AND ISHEE, JJ., JOIN THIS OPINION.**